## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re Mobile Telecommunications Technologies, LLC, | Case No. 16-md-02722-LPS-CJB |
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHT HOUSE NETWORKS, LLC,<br><br>Defendant. | Case No. 16-cv-693-LPS-CJB |
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COX COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. 16-cv-695-LPS-CJB |

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE
Henning Schmidt, Daniel R. Scardino, Drew Zerdecki, Kyle Harter, REED & SCARDINO LLP, Austin, TX

      Counsel for Plaintiff Mobile Telecommunications Technologies, LLC.


Richard L. Renck, DUANE MORRIS LLP, Wilmington, DE
L. Norwood Jameson, Matthew C. Gaudet, Alison H. Hutton, DUANE MORRIS LLP, Atlanta, GA
Joseph A. Powers, DUANE MORRIS LLP, Philadelphia, PA
Patrick S. Salceda, DUANE MORRIS LLP, Palo Alto, CA
Joshua B. Long, DUANE MORRIS LLP, Houston, TX

      Counsel for Defendants Bright House Networks, LLC and Cox Communications, Inc.

Michael E. Jones, POTTER MINTON, Tyler, TX

    Counsel for Defendant Bright House Networks, LLC.


Mitchell G. Stockwell, Michael J. Turton, Richard W. Goldstucker, KILPATRICK TOWNSEND
& STOCKTON LLP, Atlanta, GA

    Counsel for Defendant Cox Communications, Inc.

---

## MEMORANDUM OPINION

March 20, 2017
Wilmington, Delaware



**STARK, U.S. District Judge:**

Pending before the Court are motions to dismiss for lack of personal jurisdiction filed by

Defendants Bright House Networks, LLC ("BHN") and Cox Communications, Inc. ("Cox").[1]

(C.A. No. 16-693 D.I. 20; C.A. No. 16-695 D.I. 19)[2]  For the reasons below, the Court will grant

both motions.

## I.    BACKGROUND

### A.    Procedural History

On January 4, 2016, Plaintiff Mobile Telecommunications Technologies, LLC ("MTel")

filed seven suits in the United States District Court for the Eastern District of Texas (the "Eastern

District of Texas"), each alleging infringement of U.S. Patent Nos. 5,590,403 ("'403 patent");

5,915,210 ("'210 patent"); and 5,659,891 ("'891 patent") (collectively, the "patents-in-suit" or

"asserted patents").[3]  The seven actions were consolidated into one lead case on April 11, 2016.

(C.A. No. 16-692 D.I. 30)

On April 13, 2016, declaratory judgment plaintiffs ARRIS Group Inc. ("ARRIS") and

Ubee Interactive Inc. ("Ubee") (collectively, "DJ Plaintiffs") filed separate actions against MTel

---

[1]Although MTel sued other defendants in addition to BHN and Cox, "Defendants" refers to BHN and Cox in this Opinion.

[2]The Court will refer to C.A. No. 16-693 as "BHN" and C.A. No. 16-695 as "Cox" when citing the respective dockets in these cases.

[3]The seven cases (and respective defendants) are: C.A. No. 16-692 (Time Warner Cable LLC, Time Warner Cable Enterprises LLC, and Time Warner Cable Texas LLC (collectively, "TWC")); C.A. No. 16-693 (Bright House Networks, LLC ("BHN")); C.A. No. 16-694 (Charter Communications Inc. ("Charter")); C.A. No. 16-695 (Cox Communications, Inc. ("Cox")); C.A. No. 16-696 (Aruba Networks, Inc., Hewlett Packard Enterprise Company, and HP Inc. ("HP")); C.A. No. 16-697 (Brocade Communications Systems, Inc. ("Brocade")); and C.A. No. 16-698 (Juniper Networks, Inc. ("Juniper")).

in this Court, each seeking declaratory judgment of non-infringement of the patents-in-suit.

(C.A. No. 16-259 D.I. 1; C.A. No. 16-260 D.I. 1)  On April 19, 2016, BHN filed a similar

declaratory judgment action in this Court.  (C.A. No. 16-277 D.I. 1)

On May 3, 2016, MTel filed four additional lawsuits in the Eastern District of Texas

against four new defendants, alleging infringement of the same three patents.[4]  Three of these

cases were consolidated into one lead case on July 21, 2016 (C.A. No. 16-700 D.I. 6), and the

fourth was added on July 29, 2016 (*id*. at D.I. 7).  (Hereinafter, the Court refers to the 11 actions

filed in the Eastern District of Texas as the "Texas Actions" and the defendants in those actions,

collectively, as the "Texas Defendants.")

DJ Plaintiffs and the Texas Defendants fall into two general categories.  Ruckus, ARRIS,

Ubee, Juniper, Aerohive, Brocade, HP, Firetide, and Xirrus are Wi-Fi equipment providers.  Cox,

BHN, Charter, and TWC are cable network operators.

On August 5, 2016, the Judicial Panel on Multidistrict Litigation ("JPML") determined

that centralization of the 14 actions involving MTel was appropriate, and transferred the cases to

this Court for coordinated or consolidated pretrial proceedings.  (Case No. 16-md-2722 ("MDL")

D.I. 1)

## B.     Patents-in-Suit[5]

The patents-in-suit generally relate to wireless telecommunications.  The '403 patent is

---

[4]The four cases (and respective defendants) are: C.A. No. 16-699 (Ruckus); C.A. No. 16-700 (Aerohive Networks, Inc. ("Aerohive")); C.A. No. 16-701 (Xirrus, Inc. ("Xirrus")); and C.A. No. 16-702 (Firetide, Inc. ("Firetide")).

[5]The patents-in-suit can be found in Exhibits 1, 2, and 3 to the Complaints in C.A. No. 16-693 and C.A. No. 16-695.

entitled "Method and System for Efficiently Providing Two Way Communication Between a

Central Network and Mobile Unit." The claims of the '403 patent cover methods for wirelessly

simulcasting information signals. ('403 patent at 33:11-30, 34:35-62)

The '210 patent is entitled "Method and System for Providing Multicarrier Simulcast

Transmission." The claims of the '210 patent cover systems for wirelessly transmitting

information via two sets of carrier signals in simulcast. ('210 patent at 33:47-62, 34:44-64, 36:7-

24)

The '891 patent is entitled "Multicarrier Techniques in Bandlimited Channels" and

claims a system and methods for transmitting wireless signals using specific frequency spacing

for carriers in a band-limited channel. ('891 patent at 6:4-44)

### C.   Defendants' Motions

BHN and Cox filed their motions to dismiss for lack of personal jurisdiction on March

18, 2016. (BHN D.I. 20; Cox D.I. 19) The parties completed an initial set of briefs on the

motions on May 9, 2016. (BHN D.I. 20, 26, 27, 28; Cox D.I. 19, 25, 26, 27) The Court which

BHN and Cox claim lacks personal jurisdiction over them is the Eastern District of Texas.

On June 28, 2016, MTel moved for leave to file supplemental briefing on the effect of

Charter's acquisition of BHN, and subsequent merger with TWC, on the Court's personal

jurisdiction over BHN. (BHN D.I. 29)[6] BHN and MTel completed briefing on the motion for

leave on July 21, 2016. (BHN D.I. 30, 31, 34, 35)

On October 11, 2016, MTel filed additional motions for leave to file supplemental

---

[6]The Court will grant MTel's motion for leave. The Court has reviewed and taken into consideration all supplemental briefing addressing the pending motions.

briefing on whether BHN and Cox implicitly consented to jurisdiction in Texas by supporting

centralization of pretrial proceedings in a multidistrict litigation and by actively participating in

their respective cases. (BHN D.I. 44; Cox D.I. 36) The Court granted these motions for leave

(BHN D.I. 46; Cox D.I. 38) and the parties completed briefing on October 24, 2016 (BHN D.I.

44, 48; Cox D.I. 36, 40).

The Court heard oral argument on October 26, 2016. (MDL D.I. 71 (Transcript ("Tr.")))

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks

personal jurisdiction over the defendant. In patent cases, Federal Circuit law governs analysis of

specific personal jurisdiction.[7] *See Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d

755, 759 (Fed. Cir. 2016). "Determining whether specific personal jurisdiction over a

nonresident defendant is proper entails two inquiries: whether a forum state's long-arm statute

permits service of process, and whether the assertion of jurisdiction would be inconsistent with

due process." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citations

omitted). Texas's long-arm statute extends as far as the Fourteenth Amendment's Due Process

Clause permits. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413

(1984) (citing *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex.

1982)). Due process is satisfied if the Court finds the existence of "minimum contacts" between

the nonresident defendant and the forum state, "such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

---

[7]MTel does not argue that the Court has general personal jurisdiction over either of the
Defendants.

U.S. 310, 316 (1945) (internal quotation marks omitted).

In *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001), the Federal Circuit set

forth "a three-factor test to determine whether asserting jurisdiction over an out-of-state

defendant comports with due process." "The three factors are: (1) whether the defendant

purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or

relates to the defendant's activities with the forum; and (3) whether assertion of personal

jurisdiction is reasonable and fair." *Id.* (internal quotation marks omitted). "The first two factors

correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third

factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* The first

two factors are both "necessary" for personal jurisdiction over a defendant, *Akro Corp. v. Luker*,

45 F.3d 1541, 1545 (Fed. Cir. 1995), and plaintiff bears the burden of proof on these factors,

*Inamed*, 249 F.3d at 1360.

"To survive a motion to dismiss in the absence of jurisdictional discovery, plaintiffs need

only make a prima facie showing of jurisdiction." *Nuance Commc'ns, Inc. v. Abbyy Software

House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citation omitted). "Without discovery and a record

on jurisdiction, [the] court must resolve all factual disputes in the plaintiff's favor." *Id.* (citation

omitted). "[W]here the plaintiff's factual allegations are not directly controverted, they are taken

as true for purposes of determining jurisdiction." *Akro*, 45 F.3d at 1543 (internal brackets and

quotation marks omitted). The Court may consider "affidavits and other written materials in the

absence of an evidentiary hearing" in determining whether it has personal jurisdiction. *Coyle*,

340 F.3d at 1349.

## III. DISCUSSION

Defendants argue that they have insufficient contacts with Texas for the Court to have personal jurisdiction over them because they conducted no business in Texas and otherwise had no relevant contacts with Texas during the relevant period. (*See* BHN D.I. 20 at 1-4; Cox D.I. 19 at 1-4) MTel presents three primary arguments in opposition to Defendants' motions. First, MTel argues that Defendants' arrangements with other cable network providers to supply WiFi access to Defendants' customers when they travel to Texas confer personal jurisdiction over Defendants. (*See* BHN D.I. 26 at 8-11; Cox D.I. 25 at 8-12) Second, MTel argues that Defendants waived any objection to the Court exercising personal jurisdiction over them by supporting consolidation of litigation in an MDL and by actively participating in these litigations in Texas. (*See* BHN D.I. 44-1; Cox D.I. 36-1) Third, MTel argues that Charter's acquisition of BHN confers personal jurisdiction over BHN because of Charter's contacts with Texas. (*See* BHN D.I. 30, 34) The Court addresses each of these arguments below.

### A. WiFi Hotspots

Defendants acknowledge that they contracted with other cable network providers that operate in Texas to supply Defendants' customers with access to WiFi hotspots. (BHN D.I. 20 at 9; Cox D.I. 19 at 9) Defendants argue, however, that these arrangements are insufficient to create personal jurisdiction over them in Texas because they are akin to roaming agreements that courts have repeatedly found to be insufficient to create the minimum contacts necessary to establish personal jurisdiction. (BHN D.I. 20 at 9-13; Cox D.I. 19 at 9-11) (citing *Garnet Dig., LLC v. Apple, Inc.*, 893 F. Supp. 2d 814, 817 (E.D. Tex. 2012) ("Other courts have considered whether roaming agreements alone are sufficient to establish personal jurisdiction over a cellular

provider and have held these agreements alone are not sufficient to establish personal jurisdiction.") (collecting cases))

According to MTel, Defendants have "entered the Texas market" by "contracting for and engaging in an alliance to extend WiFi service" to their customers while they are in Texas. (BHN D.I. 26 at 1; Cox D.I. 25 at 1) BHN is alleged to participate in the "CableWiFi" and "Time Warner Cable Passpoint" networks. (BHN D.I. 26 at 1) Cox is alleged to participate in only the "CableWiFi" network. (Cox D.I. 25 at 1) MTel does not argue that there is any meaningful distinction between the CableWiFi and TWC networks for purposes of deciding Defendants' motions.

MTel argues that Defendants' contacts amount to substantially more than the "mere roaming agreement" considered to be insufficient to establish minimum contacts in *Garnet Digital*. (BHN D.I. 26 at 11; Cox D.I. 25 at 12) According to MTel, the roaming agreement in *Garnet Digital* was not sufficiently related to the specific instrumentalities (mobile devices) accused of infringement in that case, whereas the cable WiFi agreements at issue in this case are related to "the very Wi-Fi access points that MTel accuses." (*See* BHN D.I. 26 at 12; Cox D.I. 25 at 13) Specifically, MTel argues that Defendants have minimum contacts with Texas because they "authenticate" their customers' credentials when those customers attempt to access WiFi hotspots in Texas. (BHN D.I. 26 at 6; Cox D.I. 25 at 7)

Defendants counter that "the patents-in-suit have nothing to do with 'authentication' technology" and, therefore, that MTel has failed to make a prima facie showing under the second factor in *Inamed* – i.e., Plaintiff has failed to show that its claim arises out of or relates to Defendant's activities. (*See* BHN D.I. 27 at 3; Cox D.I. 26 at 8) On this point, the Court agrees

7

with Defendants.

The patents-in-suit relate to wireless communications rather than authentication, and MTel makes no persuasive attempt to tie authentication to the asserted patents. MTel argues in its sur-reply brief that authentication of a user "necessarily must be communicated over-the-air on the 802.11 downlink of the WiFi Access Point." (BHN D.I. 28 at 2-3; Cox D.I. 27 at 2-3; *see also* Tr. at 93 (MTel arguing that "there is an authentication procedure" involving "transmissions that go through that WiFi access point in Texas that come from the authentication server" and that said transmissions "would be the subject of an infringement claim for these transmission patents")) But to the extent that the patent claims do implicate an "authentication procedure," there is no evidence in the record that wireless communication of authentication is in any way controlled or directed by Defendants.

To the contrary, the only evidence of record on this issue indicates that third parties in Texas, and not Defendants, control how authentication procedures are transmitted wirelessly. (*See* BHN D.I. 20-2, Declaration of Paul Woelk, Vice President at BHN, ¶¶ 5-6 (stating BHN has no control over WiFi equipment in Texas used by customers pursuant to WiFi collaborations); Cox D.I. 19-3, Declaration of Robin Sangston, Vice President at Cox, ¶¶ 18-19 (stating same regarding Cox); Cox D.I. 25 at 7 (diagram depicting CableWiFi authentication process as user-initiated and indicating that Defendants' servers provide authentication in completely separate network from network that communicates authentication result wirelessly to customers)) Even when viewed in the light most favorable to MTel, the evidence and uncontroverted pleadings cannot support a conclusion that Defendants have "'purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State'" by authenticating their customers' user

8

credentials. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

MTel argues that the instant case is analogous to *Centre One v. Vonage Holdings Corp.*, 2009 WL 2461003, at *3 (E.D. Tex. Aug. 10, 2009), in which the Court held that defendants who "directly provide[d] the allegedly infringing instrumentality" to customers "in order to facilitate the use of that instrumentality all over the country" were subject to the Court's personal jurisdiction (*see* BHN D.I. 26 at 8-9; Cox D.I. 25 at 9-10). *Centre One* is distinguishable because there is no allegation here that Defendants have controlled or provided their customers with any infringing instrumentality – such as WiFi equipment – intended to be used in Texas. As noted above, the only record evidence on this issue indicates that Defendants do **not** operate **any** of the accused equipment in Texas. (BHN D.I. 20-2 ¶¶ 5-6 (stating BHN has no control over WiFi equipment in Texas used by customers pursuant to WiFi collaborations); Cox D.I. 19-3 ¶¶ 18-19 (stating same regarding Cox))

MTel also contends that the instant case is analogous to *Freedom Wireless, Inc. v. Cingular Wireless LLC*, 2008 WL 4500698, at *1-2 (E.D. Tex. Sept. 29, 2008), in which the Court held that a defendant was subject to personal jurisdiction when the defendant used and "directed changes" to a system managed by a Texas-based co-defendant (*see* BHN D.I. 26 at 9-10; Cox D.I. 25 at 10-11). As already discussed with respect to *Centre One*, there is no evidence that Defendants here ever exercised any control over WiFi hotspots in Texas. Thus, *Freedom Wireless* is similarly distinguishable.

MTel argues that Defendants have "collaborated" with other cable network providers to "jointly create and maintain" Texas WiFi hotspots, some of which are in Texas. (*See* BHN D.I.

9

26 at 1, 3-4; Cox D.I. 25 at 1, 4) MTel adds that Defendants are part of a "strategic alliance" like

the one found to exist in *Novartis Vaccines & Diagnostics, Inc. v. Hoffman-La Roche Inc.*, 597 F.

Supp. 2d 706, 716 (E.D. Tex.), *vacated on other grounds sub nom. In re Hoffmann-La Roche*

*Inc.*, 587 F.3d 1333 (Fed. Cir. 2009). The Court disagrees. In *Novartis*, the Court held that a

party who derived substantial revenue from the sale of a drug should reasonably anticipate being

haled into court where the drug is sold, under a "stream of commerce" theory. *See id.* There is

no evidence that Defendants derive substantial revenue from their participation in the WiFi

collaborations. In fact, the record indicates that Defendants have no control over whether *any*

WiFi hotspots will be available in Texas (*see* BHN D.I. 20-2 ¶ 6; Cox D.I. 19-3 ¶ 19) (BHN and

Cox Vice Presidents indicating that CableWiFi and TWC agreements were not contingent on

hotspots being available in Texas), cutting against the notion that they have "played a crucial role

in placing the [infringing instrumentality] into the stream of commerce" in Texas, or have

derived profits from Texas-related activity, *Novartis*, 597 F. Supp. 2d at 716.[8]

At the hearing, MTel took its "strategic alliance" arguments even further and suggested

that a "joint venture" or "general partnership" may exist among the cable network providers. (Tr.

at 86) There is no evidence in the record and no uncontroverted allegation in the pleadings to

support this argument. At most, the WiFi collaborations may be characterized as standard

business dealings among the cable network operators. But "doing business with a company that

does business in [a forum state] is not the same as doing business in [the forum state]." *Red*

---

[8]MTel argues that Cox offers CableWiFi service only to certain customers who pay "additional money for higher tier broadband plans." (Cox D.I. 25 at 5 n.11) However, there is no evidence that any Cox customers – *none of whom reside in Texas* – were willing to (or did) pay more for access to WiFi hotspots *in Texas* or that any such customers used the service in Texas.

*Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998); *see also Ctr. One*, 2009 WL 2461003, at *4 ("[T]he fact that VCI owns or does business with companies with contacts in Texas does not allow it to rely on those contacts for jurisdictional purposes.").

MTel alleges that Defendants (1) direct customers to use WiFi hotspots in Texas via coverage maps available on Defendants' websites and (2) provide reciprocal services to Texas customers of other cable network providers when they travel to markets where Defendants operate. (BHN D.I. 26 at 5, 12; Cox D.I. 25 at 6, 12) MTel only briefly mentions these allegations in its briefing, providing the Court no basis to conclude that these acts are anything more than mere extensions of the business dealings discussed above, which are insufficient to confer personal jurisdiction.

In summary, Defendants' participation in the WiFi collaborations is an insufficient basis for the Court to exercise personal jurisdiction over Defendants, because there is neither evidence nor an uncontroverted allegation in the pleadings that would support an inference that Defendants ever provided or controlled any WiFi system – or directed and controlled any device or functionality accused of infringement – in Texas.[9]

**B.   Defendants' Support for Consolidation in an MDL**

MTel contends that Defendants waived any objection to personal jurisdiction by

---

[9]MTel pleads a number of speculative or conclusory allegations that have been rebutted by record evidence and are unsupported by any evidence proffered by MTel. For example, MTel's complaints allege that Defendants have "made, used, sold, and offered to sell" accused WiFi equipment in Texas. (BHN D.I. 1 at ¶ 27; Cox D.I. 1 ¶ 26) Declarations submitted by personnel at BHN and Cox have rebutted these allegations. (*See generally* BHN D.I. 20-2; Cox D.I. 19-3)

(1) supporting consolidation of the Texas Actions into an MDL for resolution of pretrial proceedings, knowing that the cases would thereafter be remanded to the Eastern District of Texas for trial, and (2) actively participating in litigation in the Eastern District of Texas and in the MDL. (BHN D.I. 44-1 at 4-8; Cox D.I. 36-1 at 3-7)  The Court disagrees.  MTel has cited no authority in support of the proposition that a party that timely moves to dismiss for lack of personal jurisdiction, as Defendants have done here, waives its motion by supporting consolidation of litigation in an MDL.  (*See generally* BHN D.I. 48 at 2-8; Cox D.I. 40 at 3-8) (distinguishing cases cited by MTel)  By statute, transferee courts are authorized to decide issues raised during all "pretrial proceedings," including motions to dismiss.  *See* 28 U.S.C. § 1407(a). There is no reason to infer from Defendants' support for creation of an MDL that they intended to give up their challenge to the personal jurisdiction of the transferor court.  ·

Likewise, Defendants did not waive their motions by participating in the litigation while the pretrial proceedings were occurring in Texas.  As explained by Defendants, the Eastern District of Texas has promulgated a "No Excuses" rule, which *requires* that parties comply with certain mandatory discovery deadlines, regardless of whether motions to dismiss are pending. (BHN D.I. 48 at 3; Cox D.I. 40 at 8)  Defendants did not waive their motions by complying with Court-ordered deadlines in the Eastern District of Texas.  Moreover, Defendants have done nothing in this Court to support an inference of waiver.  (BHN D.I. 48 at 7; Cox D.I. 40 at 3-4) (describing litigation conduct preserving Defendants' motions, including notification of JPML and this Court of pendency of motions)

### C.     Acquisition of BHN by Charter

MTel argues that the BHN-Charter merger, which MTel acknowledges was not

12

completed until *after* MTel filed its complaint against BHN, is evidence that Charter "exerted

sufficient control over BHN such that Charter's jurisdictional contacts in Texas should be

imputed to BHN under an alter ego theory." (BHN D.I. 34 at 1)  Courts must "consider the

existence of personal jurisdiction on the basis of the facts as they existed *at the time the*

*complaint was filed*." *Diebold Election Sys., Inc. v. AI Tech., Inc.*, 562 F. Supp. 2d 866, 872

(E.D. Tex. 2008) (emphasis added) (citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1

(5th Cir. 1990)); *accord Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 496 (Fed. Cir. 2014).

Thus, the focus here must be on *pre-complaint* activity between BHN and Charter.

BHN argues that Charter exercised no control over BHN before the merger, as evidenced

in filings submitted to the Securities and Exchange Commission cited in BHN's brief. (*See* BHN

D.I. 35 at 3 (citing D.I. 30-2 at 28))  There is no evidence here of any pre-complaint "close

connections and arrangements" between BHN and Charter that would be "unusual for truly

independent companies." *Pfizer Inc. v. Mylan Inc.*, 201 F. Supp. 3d 483, 2016 WL 4362115, at

*5 (D. Del. 2016) (internal quotation marks omitted).  The speculative nature of MTel's alter-ego

theory is highlighted by the fact that any pre-merger control exerted by Charter over BHN would

appear to have been a willful violation of federal antitrust laws, including the Hart-Scott-Rodino

Act, by transferring control to Charter before obtaining governmental authorization to do so.

(*See* BHN D.I. 35 at 3-4 (citing 15 U.S.C. § 18a))

D. **Jurisdictional Discovery**

MTel asks the Court to permit jurisdictional discovery into MTel's WiFi-hotspot and

BHN-Charter alter ego theories of personal jurisdiction before granting Defendants' motions.

(BHN D.I. 26 at 1; BHN D.I. 30 at 5; Cox D.I. 25 at 1)  But MTel has failed to establish a "prima

facie showing of jurisdiction sufficient to require that [it] be permitted to conduct jurisdictional discovery." *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1142 (Fed. Cir. 2008); *see also Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) ("If the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained.") (internal brackets and quotation marks omitted). MTel's WiFi-hotspot and BHN-Charter-alter-ego theories of personal jurisdiction are too speculative to justify the parties embarking on a search for jurisdictional facts that, even if found, would be unlikely to support an exercise of personal jurisdiction over Defendants under the second prong of *International Shoe*.[10]

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant BHN and Cox's motions (BHN D.I. 20; Cox D.I. 19) and will deny Plaintiff's request for jurisdictional discovery (BHN D.I. 26 at 1; BHN D.I. 30 at 5; Cox D.I. 25 at 1). An appropriate Order follows.

---

[10]The Court need not make an ultimate determination under the second prong of *International Shoe*, as the Court's ruling is based solely on Plaintiff's failure to make a prima facie showing of minimum contacts.